E-FILED
Wednesday, 28 February, 2018  10:02:06 AM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| HOWARD WAYNE BROWNFIELD, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 2:18-cv-02072 |
| EXETER FINANCE, LLC, SYNERGETIC COMMUNICATION, INC. and MRS BPO, LLC, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

NOW comes HOWARD WAYNE BROWNFIELD ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of EXETER FINANCE, LLC ("Exeter"), SYNERGETIC COMMUNICATION, INC. ("Synergetic"), and MRS BPO, LLC ("MRS") (collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the TCPA under 47 U.S.C. § 227 *et seq.,* and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") under 815 ILCS 505/1 *et seq.* against Exeter for its unlawful conduct.

2. Plaintiff brings this action for damages pursuant to the TCPA under 47 U.S.C. § 227 *et seq.* and the ICFA under 815 ILCS 505/1 *et seq.* against Synergetic for its unlawful conduct.

3. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.* and the ICFA under 815 ILCS 505/1 *et seq.* against MRS for its unlawful conduct.

**JURISDICTION AND VENUE**

4.  This action arises under and is brought pursuant to the FDCPA and TCPA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Central District of Illinois and a substantial portion of the events or omissions giving rise to the claims occurred within the Central District of Illinois.

6.  Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and common questions of law or fact will arise.

**PARTIES**

7.  Plaintiff is a 56 year-old natural "person," as defined by 47 U.S.C. §153(39), residing at 515 Edgebrook Drive, Trailer 8, Champaign, Illinois, which lies within the Central District of Illinois.

8.  Exeter is a specialty automobile finance company with a headquarters located at 222 Las Colinas Boulevard West, Suite 1800, Irving, Texas.  Exeter issues and services loans to consumers throughout the country, including in Illinois.

9.  Synergetic is "a full service collection agency that is licensed in all States" and which "specializes in the Auto Finance and Mortgage Industries."[1] Synergetic is organized under the laws of the state of Texas with its principal place of business located at 5450 NW Central Drive, Suite 1000, Houston, Texas.

---

[1] http://www.syncomcorp.net/company/what_we_do

10. MRS provides accounts receivable management services to a variety of industries, including the automobile financing industry. MRS is a limited liability company organized under the laws of the state of New Jersey with its principal place of business located at 1930 Olney Avenue, Cherry Hill, New Jersey.

11. Defendants are "person[s]" as defined by 47 U.S.C. §153(39).

12. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

13. The instant action arises out of Defendants' attempts to collect upon a debt ("subject debt") said to be owed by Plaintiff.

14. The subject debt arose in 2013 after Plaintiff financed the purchase of a 2013 Volkswagen Beetle through Exeter.

15. In the spring of 2015, Plaintiff fell behind on his purported payment obligations to Exeter due to financial hardship stemming from his wife's illness.

16. Shortly thereafter, Plaintiff began receiving calls to his cellular phone, (217) XXX-0090, from Exeter.

17. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in 0090. Plaintiff was always financially responsible for the cellular phone and its services.

18. On some answered calls from Exeter, Plaintiff would experience a noticeable pause, lasting a handful of seconds in length, before a live representative would get on the line.

19. On other answered calls from Exeter, Plaintiff would experience a pre-recorded message before being connected to a live representative.

20. Upon speaking with Exeter, Plaintiff was told it was calling to collect on the subject debt.

21. Plaintiff advised Exeter of his financial hardship and demanded that Exeter stop calling his cellular phone.

22. Notwithstanding Plaintiff's demands, Exeter continued placing incessant and repeated phone calls to Plaintiff's cellular phone for months, well into 2016.

23. Exeter's collection campaign include placing multiple phone calls per day to Plaintiff's cellular phone, even after Plaintiff demanded that the calls stop.

24. In total, Exeter placed dozens of phone calls to Plaintiff's cellular phone after Plaintiff demanded that the phone calls stop.

25. Upon information and belief, Exeter turned the subject debt over to Synergetic for collection sometime in early-mid 2016, around the same time Exeter repossessed Plaintiff's 2013 Volkswagen.

26. Around this same time, Plaintiff began receiving collection calls to his cellular phone number, (217) XXX-0090, from Synergetic seeking to collect upon the subject debt.

27. Upon answering Synergetic's phone calls, Plaintiff would experience either a noticeable pause lasting several seconds in length or a pre-recorded message prior to being connected with a live representative.

28. Upon speaking with Synergetic, Plaintiff was informed that it was seeking to collect upon the subject debt.

29. Frustrated with the situation and that he was still getting collection calls, Plaintiff demanded that Synergetic cease calling his cellular phone.

30. Notwithstanding Plaintiff's demands, Synergetic continued placing phone calls to Plaintiff's cellular phone for months.

31. Synergetic placed dozens of phone calls to Plaintiff's cellular phone after he had demanded that the phone calls stop, including placing multiple phone calls per day.

32. As a result of Exeter and Synergetic's harassing phone call campaign, Plaintiff was forced to change his cellular phone number to (217) XXX-1117.

33. After making this change towards the latter months of 2016, Exeter and Synergetic's phone calls to Plaintiff's cellular phone ceased.

34. Upon information and belief, MRS either purchased or began servicing the subject debt around the end of 2016.

35. Having not been provided Plaintiff's new cell phone number, MRS turned its collection attempts elsewhere by contacting Plaintiff's employer.

36. MRS placed calls to Plaintiff's employer throughout 2017.

37. On MRS's phone calls to Plaintiff's employer, MRS would disclose that it was attempting to collect on a debt owed by Plaintiff.

38. MRS further threatened Plaintiff with jail time and a lawsuit on its phone calls placed to his place of employment

39. Frustrated over Defendants' conduct, Plaintiff spoke with Sulaiman regarding his rights, resulting in expenses.

40. With the goal of specifically addressing Exeter and Synergetic's conduct, Plaintiff incurred expenses associated with changing his cellular phone number and provider.

41. Plaintiff has been unfairly and unnecessarily harassed by Defendants' actions.

42.  Plaintiff has suffered concrete harm as a result of Defendants' actions, including but not limited to, invasion of privacy, aggravation that accompanies collection telephone, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of his telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on his cellular phone, diminished space for data storage on his cellular phone, embarrassment associated with private details being disclosed to his employer, and anxiety stemming from the threats of jail and legal action.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
AGAINST EXETER AND SYNERGETIC

43.  Plaintiff repeats and realleges paragraphs 1 through 42 as though fully set forth herein.

44.  The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent.  The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

45.  Exeter and Synergetic used an ATDS in connection with their communications directed towards Plaintiff's cellular phone.  The noticeable pause and pre-recorded messages that Plaintiff experienced on answered calls from both Exeter and Synergetic is instructive that an ATDS was being utilized to generate the phone calls. Additionally, the nature and frequency of *both* Exeter and Synergetic's contacts points to the involvement of an ATDS.

46. Exeter violated the TCPA by placing dozens of phone calls Plaintiff's cellular phone using an ATDS without his consent. Any consent that Plaintiff may have provided to Exeter through his financing of the vehicle was explicitly revoked by his demands that Exeter cease calling his cellular phone regarding the subject debt.

47. Synergetic violated the TCPA by placing dozens of phone calls to Plaintiff's cellular phone using an ATDS without his consent. Plaintiff has no direct business relationship with Synergetic, and so could not have directly provided consent to be called by it. Further, Plaintiff explicitly told the originator of the subject consumer debt, Exeter, to stop calling his cellular phone regarding the subject debt. As such, Synergetic never had consent to place any phone calls to Plaintiff's cellular phone since Plaintiff's revocation of consent from Exeter flowed to Synergetic. Any hypothetical consent Synergetic *may* have had to place any automated phone calls to Plaintiff was specifically revoked by Plaintiff's demands that Synergetic cease calling his cellular phone.

48. The calls placed by Exeter and Synergetic to Plaintiff were regarding collection activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

49. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Exeter and Synergetic are each liable to Plaintiff for at least $500.00 per call. Moreover, Exeter and Synergetic's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff, HOWARD WAYNE BROWNFIELD, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### AGAINST DEFENDANTS

7

50. Plaintiff restates and realleges paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff has standing to sue under ICFA pursuant to 815 ILCS 505/10a(a).

52. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

53. Exeter and Synergetic violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice in contacting Plaintiff. It was unfair and deceptive for Exeter and Synergetic to relentlessly contact Plaintiff through means of an ATDS after being told to stop or absent any consent to place such calls in the first place. Exeter and Synergetic ignored Plaintiff's requests and continued to systematically place calls to his cellular phone without his consent. Following their characteristic behavior in placing multiple calls to consumers, Exeter and Synergetic engaged in an unfair and deceptive act, willfully done with the hope that Plaintiff would be compelled to make payment on the subject debt.

54. MRS violated 815 ILCS 505/2 by engaging in unfair acts or practices in placing phone calls to Plaintiff's employer and informing Plaintiff's employer that he owed the subject debt, as well as the threats of jail time MRS made towards Plaintiff. These phone calls are offensive to the public policy favoring the protection of sensitive information regarding an individual's financial situation, especially as it relates to any debts owed, from employers who may be unfairly influenced by the provision of such information. MRS engaged in this conduct in an unethical and oppressive attempt to establish instill a sense of fear in Plaintiff in hopes of creating further

leverage to compel payment. MRS's conduct caused substantial injury to Plaintiff by compromising the nature of his employment, as well as the distraction and lost time created by MRS's phone calls.

55.   The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendants. *See, Brown v. C.I.L., Inc.,* 1996 U.S. Dist. LEXIS 4917 (N.D. Ill. Jan. 28, 1996) (noting that the "[a]ct of attempting to collect on a loan is sufficiently connected to trade and commerce affecting Illinois citizens to place it within the ambit of the [ICFA]").

56.   The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper."  815 ILCS 505/10a.

57.   Plaintiff has suffered actual damages as a result of Defendants' unlawful practices, including but not limited to costs associated with having to change cellular phone numbers and providers, as well as impacting Plaintiff's employment situation. As such, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a.

58.   An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful and wanton, and showed a reckless disregard for the rights of Plaintiff. Exeter and Synergetic contacted Plaintiff incessantly even after being notified to stop calling. In an unfair and deceptive manner, Exeter and Synergetic placed an onslaught of calls in an attempt to harass Plaintiff into submission, even after he demanded that they stop, so that Plaintiff would feel compelled to making payments on a debt upon which he had advised he was not financially able to make payments. Exeter and Synergetic had more than enough information to know that they should not call, let alone continue calling Plaintiff, especially at the rate they were contacting him.

Exeter and Synergetic, in defiance of the law, falsely and deceptively represented that they had the legal ability to contact Plaintiff seeking collection of a debt when they did not. Furthermore, MRS's campaign of phone calls to Plaintiff's employer and the threates made therein was a harassing and abusive tactic willfully engaged in in furtherance of its own bottom line. Upon information and belief, Defendants regularly engage in the above described behavior against consumers in Illinois and for public policy reasons should be penalized.

WHEREFORE, Plaintiff, HOWARD WAYNE BROWNFIELD, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.  Awarding Plaintiff costs and reasonable attorney fees;

d.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
AGAINST MRS

59. Plaintiff repeats and realleges paragraphs 1 through 57 as though fully set forth herein.

60. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

61. MRS is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly uses the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

62. MRS identifies itself as a debt collector, and is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or

due to others. MRS has been a member of ACA International, an association of credit and collection professionals, since 2010.[2]

63. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

### a.   Violations of FDCPA §1692b

64. The FDCPA, pursuant to 15 U.S.C. §1692b, prohibits a debt collector from "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer." Additionally, under §1692b(3), a debt collector "shall not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." Furthermore, under § 1692b(5), when contacting a third party a debt collector is prohibited from using "any language . . . that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt . . . ."

65. MRS violated §§1692b, b(3), and b(5) through its phone calls placed to Plaintiff's employer. Such conduct constitutes prohibited contact with a third party in violation of the FDCPA. MRS placed multiple phone calls to Plaintiff's employer and told Plaintiff's employer that Plaintiff owed a debt. This conduct is clearly in violation of the above referenced provisions of the FDCPA.

### b.   Violations of FDCPA §1692c

66. The FDCPA, pursuant to 15 U.S.C. §1692c(a)(3) prohibits a debt collector from contacting a consumer "at the consumer's place of employment if the debt collector knows or has reason to

---

[2] http://www.acainternational.org/search#memberdirectory

know that the consumer's employer prohibits the consumer from receiving such communication."
Additionally, under §1692c(b), "without the prior consent of the consumer given directly to the
debt collector…a debt collector may not communicate, in connection with the collection of any
debt, with any person other than the consumer, his attorney, a consumer reporting agency…the
attorney of the creditor, or the attorney of the debt collector."

67. MRS violated § 1692c(a)(3) and § 1692c(b)  by placing calls to Plaintiff's employer
seeking to collect upon the subject debt. Plaintiff did not consent to MRS placing calls to his place
of employment. Nevertheless, MRS repeatedly placed calls to Plaintiff's employer, further
informing such employer that he is said to owe the subject debt. Such conduct constitutes
communications made with someone other than the consumer in violation of the FDCPA.

### c.  Violations of FDCPA §1692d

68. The FDCPA, pursuant to 15 U.S.C. §1692d, prohibits a debt collector from engaging "in
any conduct the natural consequence of which is to harass, oppress, or abuse any person in
connection with the collection of a debt."

69. MRS violated § 1692d through its communication efforts directed towards Plaintiff's
employer. By contacting Plaintiff's employer, MRS engaged in conduct which had the natural
consequence of harassing, oppressing, and abusing Plaintiff. MRS contacted Plaintiff's employer
hoping that the employer would speak with Plaintiff regarding the calls, hoping that such outward
pressure would make Plaintiff succumb to its collection efforts. Clearly, MRS placed the calls to
Plaintiff's employer as a tactic which it knew would have the natural consequence of harassing
Plaintiff into engaging with it.

### d.  Violations of FDCPA § 1692e

70. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

71. In addition, this section enumerates specific violations, such as:

"The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person . . . .' 15 U.S.C. § 1692e(4)

"The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

"The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. §1692e(10).

72. MRS violated § 1692e, e(4), e(5), and e(10) through the threats made to Plaintiff during calls to Plaintiff's place of employment. During such phone calls, MRS threatened Plaintiff with jail time and lawsuits. Such conduct implies that the nonpayment of the subject debt would result in Plaintiff's imprisonment, and further constitutes a threat to take action that cannot legally be taken or that is not intended to be taken. As such, MRS engaged in deceptive and misleading conduct in attempting to collect upon the subject debt in violation of the FDCPA.

WHEREFORE, Plaintiff, HOWARD WAYNE BRADFIELD, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c.  Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

e.  Awarding any other relief as this Honorable Court deems just and appropriate

13

Dated: February 28, 2018                    Respectfully submitted,

                                            s/ Nathan C. Volheim
                                            Nathan C. Volheim, Esq. #6302103
                                            Counsel for Plaintiff
                                            Admitted in the Central District of Illinois
                                            Sulaiman Law Group, Ltd.
                                            2500 South Highland Ave., Suite 200
                                            Lombard, Illinois 60148
                                            (630) 568-3056 (phone)
                                            (630) 575-8188 (fax)
                                            nvolheim@sulaimanlaw.com